

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CRH:ADR
F. #2022R00707

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 1, 2023

By ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Wilson
               Criminal Docket No. 22-374 (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this sentencing memorandum in advance of the defendant Robert Wilson's sentencing hearing, which is scheduled for August 11, 2023, at 11:00 a.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence at the high end of the United States Sentencing Guidelines ("Guidelines") range of 18 to 24 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I.    Background

    A.   Offense Conduct

      The defendant, a longtime pro se civil litigant with a history of violent outbursts toward law enforcement and other public servants, assaulted three federal officers, injuring one, in violation of Title 18, United States Code, Sections 111(a)(1) and 111(b). The defendant's conduct is explained in the Probation Department's Presentence Investigation Report, dated March 20, 2023 ("PSR").

      On August 10, 2022, the defendant went to the United States Federal Courthouse for the Eastern District of New York in Central Islip, New York (the "Courthouse") and proceeded to the office of the Clerk of Court to file documents in connection with litigation before a sitting United States District Judge at the Courthouse (the "District Judge"). (PSR ¶ 3). While at that the Clerk's office, the defendant threatened, in sum and substance and in part, that if the District Judge did not "follow the rules," the defendant would return "armed" in order to "arrest the judge for treason." (Id.). Notably, since in or about May 2022, the defendant had made similar threats to Courthouse staff and to another judge, both in person and in letters. (Id.).

As a result, Court Security Officers ("CSOs") had been instructed to monitor the defendant's activities in the Courthouse.  (Id.).

On August 11, 2022, the day after he threatened to return "armed," the defendant returned to the Courthouse at approximately 10:15 a.m.  (Id. ¶ 4).  As he proceeded through the security checkpoint located at the main entrance of the Courthouse, he demanded that the CSOs stationed there tell him where the District Judge's "office" was.  (Id.).  The defendant announced that the District Judge was "treasonous."  The CSOs responded that he would not be permitted to see the District Judge at that time.  (Id.).  The defendant nonetheless proceeded to the elevator bank.  (Id.).  Consistent with the protocol previously established, a CSO ("CSO-1") escorted the defendant during this time.  (Id.).  The defendant took an elevator to the fourth floor of the Courthouse, briefly remained on that floor, and then returned to the elevator with CSO-1 continuing to follow him.  (Id.).

Once the elevator doors closed, the defendant suddenly and viciously attacked CSO-1 by grabbing him by the neck and repeatedly attempting to throw him to the floor.  (Id. ¶ 5).  The defendant punched CSO-1 repeatedly in his abdomen and ribcage.  (Id.).  Eventually, the elevator stopped at the seventh floor and its doors opened.  (Id.).  CSO-1 kept the doors open and used his radio to make a distress call.  (Id.).  Additional CSOs arrived and attempted to detain the defendant, including "CSO-2" and "CSO-3."  (Id.).  The defendant fought against those efforts before he was ultimately successfully detained.  (Id.).  CSO-1, CSO-2 and CSO-3 sustained injuries as a result of the attack and were taken to the hospital and treated.  (Id.).  CSO-1 underwent testing on his shoulder, spine, chest and ribs and sustained injuries to those areas and other parts of his body.

That same day, August 11, 2022, United States Magistrate Judge Arlene R. Lindsay signed a criminal complaint charging the defendant with assaulting a federal officer in violation of Title 18, United States Code, Section 111(a)(1).  (See ECF Dkt. No. 1).  The defendant made an initial appearance before Judge Lindsay later in the day.  At that proceeding, the defendant persisted in his violent views toward law enforcement and the justice system, stating to the court, among other things, "[I]t's time that you stop your bullshit and learn how to read . . . I've had about enough of you," "Only the United States military can execute the laws of this land . . . [Y]ou are a crime.  I am a military, retired from the military, and that gives me executable powers of arrest.  And I charge that guy, that U.S. Marshal, with a crime," and "I don't want you to continue to sit there and lie and commit a treasonous act."  (ECF Dkt. No. 18 Ex. A, Tr. at 18-19).

On August 17, 2022, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with assaulting three federal officers and causing physical injury to CSO-1, in violation of Title 18, United States Code, Sections 111(a)(1) and 111(b).  (See ECF Dkt. No. 9).  The case was reassigned to Your Honor on August 18, 2022.

On December 7, 2022, the defendant pled guilty before Your Honor, pursuant to a plea agreement, to the sole count of the indictment.  (PSR ¶ 1).

B.  Defendant's Criminal History

The violent conduct underlying the instant charge is consistent with the defendant's history of assaults, including prior attacks on law enforcement officers. In January 2013, the defendant was convicted of Resisting Arrest and sentenced to three years' probation, after he attacked and fought a police officer while he was being placed under lawful arrest. (Id. ¶ 22). In September 2019, the defendant was arrested and charged with Battery on a Person Older than 65 for grabbing an individual during a dispute and striking her multiple times in the face, causing her to fall onto nearby furniture. (Id. ¶ 33). In the same incident, the defendant struck his own sister in the back. (Id.). The defendant was also arrested in 1988 and 1989 for assault, including for an incident in which he was seen assaulting his wife outside of an elementary school. (Id. ¶¶ 30, 31).

The defendant also has a history of violating the law by engaging in schemes to defraud and steal from others. In November 2002 the defendant was convicted of Grand Larceny and Issuing a Bad Check with Knowledge of Insufficient Funds and sentenced to 6 months' imprisonment and five years of probation. (Id. ¶ 21). In September 2020 the defendant was convicted of Petit Larceny and ordered to pay nearly $10,000 in restitution. (Id. ¶ 23). In September 2021 the defendant was convicted of Attempted Grand Larceny in the 4th Degree after he misappropriated thousands of dollars paid to him to perform home improvements for another individual. (Id. ¶ 24). The defendant has had multiple other arrests for knowingly issuing bad checks totaling thousands of dollars. (Id. ¶¶ 29, 32).

II.   Applicable Law

The Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]

3

(C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The sentencing court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III.   Guidelines Calculation

The government agrees with the United States Probation Department's ("Probation's") calculation of the defendant's offense level in the PSR as set forth below:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2A2.4(a)) | 10 |
| Plus: Physical Contact (U.S.S.G. § 2A2.4(b)(1)(A)) | +3 |
| Plus: Bodily Injury (U.S.S.G. § 2A2.4(b)(2)) | +2 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Total: | 13 |

(PSR ¶¶ 9-19). The total offense level is 13, which, based on a Criminal History Category of III, carries an advisory Guidelines range of 18 to 24 months' imprisonment. (Id. ¶ 69).

IV.   A High Guidelines Sentence is Appropriate

The government respectfully submits that a sentence at the high end of the Guidelines range of 18 to 24 months is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. The need for a significant sentence is underscored by the sentencing factors articulated in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; and the need to protect the public from further crimes of the defendant.

The defendant has shown a propensity for violence and a total disregard for the criminal justice system spanning multiple decades. The attack underlying the instant charge occurred after the defendant made violent threats toward judges and other Courthouse staff over a months-long period, including threatening to return to the Courthouse "armed" to "arrest" judges. (PSR ¶ 3). Those threats must be understood within the context in which they were made. As Judge Lindsay observed during the August 11, 2022 proceeding, the defendant, in his many filings and manifestos, has written that all federal courts are unconstitutional and corrupt, that judges have no authority, and that judges should be removed and severely punished; indeed, he has written that judges are domestic enemies who should be dealt with as you would deal with individuals who have committed treason, which he has described as a crime punishable by death. (ECF Dkt. No. 18 Ex. A, Tr. at 7-8). When the defendant returned to the Courthouse on August 11, 2022, he did so with the intention of following through on his threats, asserting that he had "powers of arrest" and that he was "charg[ing]" a Deputy United States Marshal "with a crime." (Id., Tr. at 19).

4

The defendant's attack was consistent with his long-held beliefs and violent propensities. It was not an anomaly. When the CSOs stood between him and the District Judge he was demanding to see, he lashed out with overwhelming force. The defendant attacked CSO-1 by putting his hands around CSO-1's neck and repeatedly pulling him toward the floor and punching him in his ribcage. (Id. ¶ 5). The defendant physically fought CSO-2, CSO-3 and others when they tried to detain him. (Id.). The defendant's attack resulted in real physical injury to public servants who work hard and risk their wellbeing every day to protect the Courthouse and those who work in and visit it. Moreover, the attack, coupled with the defendant's comments and history of threats, gave rise to real fear among Courthouse employees.

The defendant's conduct is especially egregious here given that, as described above, the defendant has an extensive history of violence and contempt toward those who work in law enforcement, but has been thus far undeterred by past punishment. Indeed, he has exhibited a disregard for the criminal justice system altogether. When he is at liberty, he consistently presents an acute danger to others and to the community, making a significant sentence necessary to adequately deter him and protect the community.

The defendant's military service and related injury more than 40 years ago, while notable, should not insulate him from the appropriate consequences of his actions. Indeed, all three CSOs whom the defendant attacked have themselves had lengthy careers in public service during which they have consistently risked their lives and wellbeing. All three CSOs served in the New York City Police Department ("NYPD"), together logging more than 30 years of service there. One was forced to retire due to a serious injury sustained in the line of duty. One served in the New York City Fire Department ("FDNY") for more than 10 years, and as a volunteer firefighter for 45 years. And together they have served a combined nearly 50 years as CSOs. On August 11, 2022, all three were violently attacked by the defendant while protecting the safety of everyone inside the Courthouse. The defendant's service does not excuse his decades of bullying and victimizing others—both physically and through his repeated fraudulent schemes—time and again.

A sentence at the high end of the applicable Guidelines range would adequately address the seriousness of the defendant's crime, deter others and account for the defendant's history of criminality and failure to adhere to the law. Additionally, a significant term of incarceration will protect the public from further crimes of the defendant, who has demonstrated over and over that he is ready, willing and able to resort to violence and break the law.[1]

---

[1] Pursuant to his plea agreement, the defendant also has agreed to pay restitution in the full amount of each victim's loss as determined by the Court. (PSR ¶ 6). CSO-3 reported a loss of income in the amount of $1,499.52, which should be paid by the defendant. (Id.).

V.        Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at the high end of the applicable Guidelines range of 18 to 24 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Andrew D. Reich
Andrew D. Reich
Assistant U.S. Attorney
(718) 254-6452

cc:    Clerk of Court (ENV) (By ECF)
       Evan Sugar, Esq. (By ECF and Email)
       United States Probation Officer (By Email)